# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action Number: 22-cv-0503

**LINDA MACCAGNAN**,

     Plaintiff,

v.

**CHERRY CREEK SCHOOL DISTRICT NO. 5,**
**SCOTT SIEGFRIED, JENNIFER PERRY, BRENDA SMITH, KELLY BATES, ANNE EGAN, KAREN FISHER, ANGELA GARLAND, and JANICE MCDONALD,**
     Defendants.

---

## COMPLAINT

---

Plaintiff, Linda Maccagnan, by and through her undersigned attorney, hereby files the following complaint against Cherry Creek School District, Scott Siegfried, Jennifer Perry, Brenda Smith, Kelly Bates, Anne Egan, Karen Fisher, Angela Garland, and Janice McDonald (together "Defendants"):

## <u>PARTIES</u>

1.      Plaintiff Linda Maccagnan ("Maccagnan") is an individual and a resident of Colorado.

2.      Defendant Cherry Creek School District No. 5 ("District") is a Colorado school district, with its principal offices located at 4700 South Yosemite Street Greenwood Village, CO 80111.

1

3.      Defendant Scott Siegfried ("Siegfried"), is a Colorado resident and was the Superintendent of the Cherry Creek School District at most times relevant to this complaint.  Mr. Siegfried is sued in his individual and official capacities.

4.      Defendant Jennifer Perry ("Perry") is a Colorado resident and was the Assistant Superintendent of Educational Operations of the Cherry Creek School District at all times relevant to this complaint.  Ms. Perry is sued in her individual and official capacities.

5.      Defendant Brenda Smith ("Brenda Smith) is a Colorado resident and was the Chief Human Resources Officer for the Cherry Creek School District at all times relevant to this complaint.  Ms. Smith is sued in her individual and official capacities.

6.      Defendant Kelly Bates ("Bates") is a Colorado resident and, at all times relevant to this complaint, was a member of the Cherry Creek Board of Education.  Bates is sued in her individual and official capacities.

7.      Defendant Anne Egan ("Egan") is a Colorado resident and, at all times relevant to this complaint, was a member of the Cherry Creek Board of Education.  Egan is sued in her individual and official capacities.

8.      Defendant Angela Garland ("Garland") is a Colorado resident and, at all times relevant to this complaint, was a member of the Cherry Creek Board of Education.  Garland is sued in her individual and official capacities.

9.      Defendant Janice McDonald ("McDonald") is a Colorado resident and, at all times relevant to this complaint, was a member of the Cherry Creek Board of Education. McDonald is sued in her individual and official capacities.

10.     Defendant Karen Fisher ("Fisher") is a Colorado resident and, at most times relevant to this complaint, was a member of the Cherry Creek Board of Education.  Fisher is sued in her individual and official capacities.

## JURISDICTION

11.     The purpose of this action is to redress and restrain acts or practices by Defendants that federal law deems unlawful.

12.     The Court has original jurisdiction over the subject matter of these claims pursuant to 28 U.S.C.  §1331, 42 U.S.C. §1983, 29 USC §§206, 215-217, and 20 USC §§1706, 1708.

13.     Venue for this action properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b).

## NATURE OF THIS ACTION

14.     This case arises out of the actions of Defendants, individually and in concert, (i) in depriving Ms. Maccagnan of her due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution when they deprived her of substantial income without due process and took disciplinary and defamatory action against her without providing a meaningful opportunity to address allegations; (ii) in depriving Ms. Maccagnan of her rights under the First

and Fourteenth Amendments when they retaliated against her for speaking out about matters of public concern; (iii) in violating Ms. Maccagnan's rights under the Equal Pay Act when they paid her less than male administrators doing the same work; and (iv) in violating Ms. Maccagnan's rights under Title IX of the Education Amendments of 1972 by discriminating against her on the basis of her gender, and retaliating against her for opposing discrimination.

## **FACTUAL ALLEGATIONS**

*Background*

15.    Ms. Maccagnan began employment at the Cherry Creek School District ("the District") in August of 1996 and worked there until she took early retirement in June of 2021.

16.    Ms. Maccagnan worked as: (i) a science teacher at Horizon Middle School from August of 1996 to March of 1998; (ii) Teaching Learning, Technology Specialist from April of 1998 to June 2001; and (iv) Coordinator of Online Learning from July of 2001 to June of 2008.

17.    Ms. Maccagnan became an assistant principal in July of 2008, was promoted to principal at Challenge School in September of 2014, and became principal of High Plains Elementary in July of 2018.  She was demoted in 2020 to assistant principal and placed in Altitude Elementary School.

18.    During her tenure, Ms. Maccagnan always had positive evaluations. On her first evaluation as a principal she was rated "Effective" and, on every evaluation since then, she was given the highest rating of "Highly Effective."

19.      Ms. Maccagnan's immediate supervisor was Diana Roybal, the Executive
Director of Elementary Education for the Cherry Creek School District.  Ms. Roybal's
supervisor, and Ms. Maccagnan's second level supervisor was Jennifer Perry, the Assistant
Superintendent of Educational Operations of the Cherry Creek School District.  The
superintendent was Scott Siegfried, who served in that position until June of 2021.  Dr. Siegfried
was succeeded by Christopher Smith, who was Chief of Staff until July of 2021.

20.      All of those administrative officers had substantial responsibilities for day-to-day
operations in the District.

21.      The Board of Education for the District ("the Board") at relevant times in this
matter was composed of Kelly Bates, Anne Egan, Karen Fisher, Angela Garland, and Janice
McDonald.  All of those persons are still serving on the Board at this time except Ms. Fisher.

22.      The Board is responsible, among many other responsibilities, for: (i) employing
the staff necessary for carrying out instructional programs and establishing salaries and salary
schedules and other terms and conditions of employment, as well as for personnel policies
District-wide in application; and (ii) acting as a court of appeal for school staff members,
students and the public when issues involve Board policies and their fair implementation.

*Demotion*

23.      Despite her good evaluations, Defendants –including Scott Siegfried,
Superintendent, Jennifer Perry, Assistant Superintendent, and Brenda Smith, Chief Human
Resources Officer -- demoted Ms. Maccagnan to an assistant principal position on April 16, 2020
and told Maccagnan that she would be reassigned to another school.

24.     The members of the Board of Education – specifically Kelly Bates, Anne Egan, Karen Fisher, Angela Garland, and Janice McDonald -- ratified and effectuated that decision.

25.     In justifying her demotion, the Defendants – including Jennifer Perry, Diana Roybal, and Brenda Smith -- alleged primarily that Ms. Maccagnan had lost "the confidence of her staff," or words to that effect.  Men in similar situations, however, were not demoted for similar behavior, for example, when staff and parents complained about a male elementary school principal because of a toxic environment at the school, poor programming in Special Education, lack of communication, lack of engagement, not being visible, and being out of the building too much, the Defendants gave the male school money for programs and aesthetic improvements, as well as an assistant principal.  He remained in his principal position at that school until he was recently moved to a principal position at another school.

26.     To support of the Defendants' allegations that she had lost the confidence of her staff, Maccagnan's immediate supervisor, Dr. Roybal, conducted a bias investigation of.

27.     When the Defendants demoted Maccagnan, the Defendants decreased her salary more than it decreased the salaries of male administrators, some of whom had committed serious actions, for example: when Maccagnan was demoted from Principal to Assistant Principal, her salary remained the same for a year minus a $2,000 daycare stipend; in the second year her salary was to be decreased by $20,000+.  Two other male administrators were demoted from a principal position to an assistant principal position around the same time; in one case, the male suffered no pay cut, and in the other, the male had a $2,000 pay cut.

28.     District rules/policies require that any administrator facing misconduct/disciplinary charges must be allowed an opportunity to respond to the allegations of wrongdoing.  Ms. Maccagnan was given no opportunity to respond to any allegations leading to her demotion, or given an opportunity to improve if there were issues.

*Complaints about Discrimination*

29.     Prior to her demotion, Ms. Maccagnan complained about discrimination on several occasion, including but not limited to the following:

> a.     In January of 2019, Ms. Maccagnan complained to Scott Siegfried, then Superintendent, about sexual harassment and discrimination occurring in the District.  He replied that there are "a lot of secrets" in the district.  Worse, he stated that he had windows put in all the doors at the central office because of the constant sexual harassment.

> b.     On December 9, 2019, Ms. Maccagnan shared with Joy Ross, then Director of Human Resources, and in front of other staff members, that she felt that she was being treated differently because she was a woman.

30.     During the meeting in which Ms. Maccagnan was demoted on April 16, 2020 -- attended by Jennifer Perry, Diana Roybal, and Brenda Smith -- Maccagnan complained that she was being subjected to discrimination and gender stereotyping.

31.     After she was told that she would be demoted, on April 17, 2020, Ms. Maccagnan, through her attorney, complained to the District's attorney that the demotion was discrimination based on gender.  The District's attorney responded on behalf of the District.

32.     In August of 2020, Ms. Maccagnan filed a complaint with the Office of Civil Right ("OCR") in the Education Department detailing a pattern and practice of discrimination, including unequal pay, sexual harassment and stereotyping on the basis of gender in the Cherry Creek School District.   OCR accepted the complaint and made it public on July 23, 2021.  Upon information and belief, OCR notified the District about the complaint on or about July 23, 2021.

33.     Ms. Maccagnan also filed two internal complaints about discrimination issues with the District in or about the beginning of 2021.  The District assigned a law firm that served as litigation counsel for the District to investigate Maccagnan's complaints, which law firm rejected her complaints in a biased opinion.

*Retaliation*

34.     In her complaint about discrimination in April, 2020, Ms. Maccagnan asked that she be allowed to choose the location to which she would be reassigned.  There were several openings in the District for an assistant principal. A principal with one of those open positions requested that Ms. Maccagnan join her staff as an assistant principal. Defendants refused Maccagnan's request to have input into her new location and refused the principal's request to have Maccagnan join her staff..

35.     In late April of 2020, the Defendants, including Scott Siegfried and Jennifer Perry, made the decision to assign Maccagnan to a school, Altitude Elementary School ("Altitude"), in which she endured harassment and a hostile work environment, for example:

> a.     The principal at Altitude, Scott Schleich, constantly made sexist jokes, for example, in one staff meeting making a joke about a female teacher

8

chaining her husband to a desk and in another, saying that "Judi is doing a
side thingy with Ben."

b.    The principal had a folder in the school's main office containing day-to-
day documents for school operations named "Schleich's Schladies."

c.    Mr. Schleich refused to include Ms. Maccagnan in important
communications and assigned her very little work to do.

36.    Principal Schleich also refused to comply with school rules and mandates
regarding Covid, for example, not requiring staff to wear masks in meetings and refusing to
quarantine after he had traveled.

37.    The disregard of Covid safety protocols, along with the discrimination and
harassment she was suffering caused Maccagnan to take leave for most of the 2020-2021 school
year.

38.    Conditions at Altitude finally caused Maccagnan to take early retirement in June
of 2021.

39.    Despite Ms. Maccagnan's numerous complaints about Altitude, gender
discrimination and harassment has continued unabated, for example, in a Facebook Christmas
post, a male teacher at Altitude is wearing a sweater that reads "Where my Ho's at" while
surrounded by female staff.  Principal Schleich gave his "love" approval to the Facebook posting
while the school's assistant principal Midge Eidson commented, "Great picture! Great team!"  A
news article about the photograph quoted a teacher who saw the post as saying "The men do it
and the women just shut up and go along with it…That's just how things are done here. If it's a
woman who does it, out you go."

40.    Defendants made numerous public negative comments about Ms. Maccagnan,
including the following:

a.    In or about January of 2022, a news reporter began an investigation into
discrimination at the Cherry Creek School District.

b.    The Defendants provided a statement to a news outlet stating that Ms.
Maccagnan was demoted because of poor performance.  The Statement
said "Ms. Maccagnan was demoted from her principalship based on
serious performance concerns that caused her to lose the support and trust
of two school communities."  The news outlet published that statement in
an article dated February 13, 2022.

c.    Defendants also provided the reporter an alleged quote from the president
of the teachers union that "It was clear from our conversations with
teachers, staff, and parents, that Linda Maccagnan completely lost the
confidence of her community and was unable to lead." In fact, the teachers
union have no authority to talk with parents about Ms. Maccagnan or any
other administrator.

41.    Because of the Defendants' actions in demoting Ms. Maccagnan and publicly
stating that she performed poorly, as well as other negative statements, without reason, the
Defendants have damaged her reputation.

*Unequal Pay*

42.     The District has a pattern and practice of paying female administrators, including Ms. Maccagnan, less than males doing equal work, either outright or through secret manipulation of salary criteria such as experience levels, as exemplified by the following:

        a.      In 2014, the then-Assistant Superintendent of Human Resources shared with Ms. Maccagnan that, based on a survey of administrator salaries, she had to adjust the pay of several female administrators because they were paid less than men.

        b.      Other salary surveys were completed in 2018 and 2021; they also showed numerous instances of women being paid differently than men.

43.     Although the process is not transparent, salary surveys are done by the Defendants occasionally to determine specific administrator salaries.  In those surveys, several factors are considered, one of the most important being the amount of experience an administrator has ("experience credit")

44.     Salary surveys are not provided to staff by Defendants.  Ms. Maccagnan is aware that salary surveys were done in 2014, in 2018, and recently in 2021.

45.     Ms. Maccagnan was able to secure the 2018 salary survey in 2020, but only after her attorney filed a CORA request.

46.     After receiving the 2018 salary survey, Ms. Maccagnan found that she was being paid less than male administrators doing the same work with the same or less experience.

47.     The Defendants disguised the inequality by secretly reducing her experience credit, thus resulting in a significant reduction in her pay, specifically:

        a.     In 2008, Ms. Maccagnan was given 7 years of experience credit in determining her beginning salary.

        b.     In 2020, Ms. Maccagnan found that the Defendants – including Brenda Smith -- had reduced her experience credit by seven (7) years, thus reducing her salary and future retirement.

        c.     As a result of this secret elimination of her experience credit, Ms. Maccagnan is paid less than some male administrators doing equal work with the same or less experience.

        d.     The change in experience credit has resulted in a loss of wages in the approximate amount of $19,988 and will result in a loss of retirement income in the approximate amount of over $200,000 in her lifetime.

48.     The Defendants did not notify Ms. Maccagnan of the change in her experience credit that reduced her salary and retirement income and did not give her an opportunity to be heard on this significant loss.  Ms. Maccagnan only found out when her attorney received the salary records in response to a CORA request.

49.     The Chief Human Resources Officer for the District, Brenda Smith, specifically kept the elimination of experience credit from Ms. Maccagnan.

50.     The Defendants also disguise inequalities between male and female administrators by using the discriminatory grants of additional moneys called "special consideration stipends."

51.     Ms. Maccagnan attempted to remedy the salary inequalities by writing to Brenda Smith, the District's Chief Human Resources Officer, Scott Siegfried the Superintendent of the District, and the members of the Board of Education (Bates, Egan, Fisher, Garland, and McDonald) and asking for an adjustment to her salary.  Her requests for relief were rejected by the Defendants.

*Hostile Work Environment*

52.     The Defendants have subjected Ms. Maccagnan and numerous other women to a hostile work environment, including but not limited to the following examples:

a.  During an elementary principals' meeting, when people share funny stories from their school, an assistant principal shared stories about his wife in lingerie and moms at his school asking him "if the rugs matched the drapes."

b.  At the December 2019 elementary principal meeting during "holiday games," one of the games involved putting a tennis ball in panty hose and using them to knock down bowling pins. The leaders of the games were making several sexual innuendos in reference to "balls."

c.  During an elementary principal meeting in December of 2017, a male principal wore a winter themed sweater in which a carrot on the snowman was positioned to look like a male erection.  He stood in front of the group and laughed about it.

13

d.  There is a "boy table" of elementary principals that always sit together. It is regularly pointed out and celebrated at meetings and laughed about the trouble they cause.

e.  The then executive director, Christopher Smith, told two male principals who notified him that they were in trouble with the police for drunk driving that the District would protect them, even if it was really bad. This was shared with the entire group of elementary principals. When one of the principals was later accused of sexual harassment (Todd Wynne), this executive director was the one who gave Wynne only a memo of reprimand and no cut in pay or a demotion.

f.  During an elementary principal meeting in the 2020 school year, Diana Roybal made fun of another female executive director because she was uncomfortable using the term "balls."

53.    District officials Scott Siegfried, the District Superintendent at the time, Christopher Smith, current Superintendent, Jennifer Perry, Assistant Superintendent of Educational Operations, Diana Roybal, former Executive Director of Elementary Education, and Brenda Smith, Chief Human Resources Officer all knew about the hostile work environment created for women staff, and in some cases, as detailed above, participated in creating that hostile work environment.

54.    On information and belief, Defendant Board members (Kelly Bates, Karen Fisher, and Janice McDonald) were aware of hostile work environment/discrimination in the District, having been sent at least one letter alleging misconduct with teachers and students on the part of a high level administrator.

55.     The Defendants routinely subject women administrators, including Ms. Maccagnan, to less favorable work conditions than male administrators by, among other actions, providing greater support for males, performing longer and more public investigations into alleged misconduct/poor performance by women administrators than performed for male administrators, giving women administrators harsher penalties for misconduct/poor performance, and holding female administrators to higher standards than male administrators.

56.     Discrimination based on race is also rampant in the Cherry Creek School District, for example, Tony Poole -- then Executive Director of Student Achievement Services and now Assistant Superintendent of Special Populations -- told a group of people, including two Black women they "needed to know who their master was."  When several staff members complained, he followed up with an email that dismissed their concerns and that was perceived as many to be threatening their jobs, the email starting with "You all WORK FOR ME.  You need to remember that.  You answer to me.  Period."  Poole was subsequently promoted to Assistant Superintendent.[1]

*Stereotyping*

57.     The Defendants engage in systematic gender stereotyping and preferences for male administrators, for example,

---

[1] The leadership team at the District is entirely Caucasian except for the Assistant Superintendent – Equity, Culture and Community Engagement.

a.    The Defendants evaluate the same traits in women as less favorable than the same traits in males, e.g. strong women, including Ms. Maccagnan are considered as too aggressive and strong men as good leaders.

b.    Diana Roybal, the District's Executive Director, apologized to the hiring committee that there were only three male candidates in the hiring pool for the job of Principal of High Plains.

c.    Male bad behavior is tolerated or minimized while female misconduct is harshly treated.

*Damages*

58.    As noted above, Ms. Maccagnan has and will suffer a substantial loss of income and retirement funds because of Defendant's actions, especially the action of demoting her and secretly eliminating experience credit.

59.    Ms. Maccagnan has suffered non-economic damages, including loss of reputation, and emotional and physical injuries and damages because of the actions of Defendants, including but not limited to damage because Defendants: (i) subjected her to sexual harassment and discrimination, (ii) falsely stated that her performance was poor, (iii) demoted her, and (iv) eventually caused her to retire early.

60.    Ms. Maccagnan has suffered damages because of the deprivation by a government entity of her basic constitutional rights.

## VIOLATIONS ALLEGED

61.    As to each of the following claims for relief, paragraphs 1 through 60 above are incorporated by reference and re-alleged as if fully set forth in each separate claim.

## FIRST CLAIM

**(Violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution)**
**[All defendants]**

62.    Defendants are a public school district and district officials and at all times relevant to this complaint were acting under color of state law.

63.    In taking the actions described above, especially: (i) the action of taking a disciplinary action against her, including demoting her for alleged serious performance issues without any kind of hearing; (ii) the action of depriving her of substantial salary and retirement with no opportunity for a hearing on the deprivation; and/or (iii) the action of defaming her and affecting future opportunities to secure employment in her chosen field, Defendants, acting individually and together, violated Ms. Maccagnan's due process rights under the 5th and 14th Amendments to the United States Constitution.

64.    Defendants took these actions intentionally and willfully, knowing that they were unlawful or in reckless disregard of their unlawfulness.

65.    Defendants' actions caused harm to Maccagnan, which harm Maccagnan seeks to remedy through action authorized under 42 U.S.C. §1983.

## SECOND CLAIM

**(Violation of the First Amendment as Incorporated in the Fourteenth Amendment to the U.S. Constitution)**
**[All defendants]**

66.     Defendants are a public school district and district officials and at all times relevant to this complaint were acting under color of state law.

67.     In taking the actions described above, especially: (i) the action of demoting her, (ii) the action of placing her in and subjecting her to a hostile work environment; and/or (iii) the action of defaming her, after she spoke out about matters of public concern, Defendants, acting individually and together, violated Ms. Maccagnan's rights under the First Amendment to the United States Constitution, as incorporated by the 14th Amendment.

68.     Defendants took these actions intentionally and willfully, knowing that they were unlawful or in reckless disregard of their unlawfulness.

69.     Defendants' actions caused harm to Maccagnan, which harm Maccagnan seeks to remedy through action authorized under 42 U.S.C. §1983.

## THIRD CLAIM

**(Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution)**
**[All defendants]**

70.     Defendants are a public school district and district officials and at all times relevant to this complaint were acting under color of state law.

71.     In taking the actions described above, especially: (i) the action of demoting her without cause while men engaged in the same alleged misconduct were not demoted, (ii) the action of placing her in and subjecting her to a hostile work environment; and/or (iii) the action

of paying her less than men doing the same or similar jobs, Defendants, acting individually and together, violated Ms. Maccagnan's rights under the equal protection clause of the14th Amendment to the United States Constitution.

72.     Defendants took these actions intentionally and willfully, knowing that they were unlawful or in reckless disregard of their unlawfulness.

73.     Defendants' actions caused harm to Maccagnan, which harm Maccagnan seeks to remedy through action authorized under 42 U.S.C. §1983.

## **FOURTH CLAIM**

### **(Violation of the Equal Pay Act)**
### **[All Defendants]**

74.     Defendants are a public school district and district officials are employers as that term is defined in 29 U.S.C. §§ 203 and 262.

75.     In taking the actions described above, especially the action of paying male administrators who perform equal work to Ms. Maccagnan's work more than Maccagnan, Defendants, acting individually and together, violated Ms. Maccagnan's rights under the Equal Pay Act of 1963, 29 U.S.C. 206 *et seq.*.

76.     Defendants took these actions intentionally and willfully, knowing that they were unlawful or in reckless disregard of their unlawfulness.

77.     Defendants' actions caused harm to Maccagnan, which harm Maccagnan seeks to remedy through action authorized under 29 U.S.C. §§216-217.

**FIFTH CLAIM**
**(Violation of Title IX)**
**[District and Board of Education]**

78.     Defendants are a public school district and its Board of Education which comprise

an educational institution receiving federal funds.

79.     In taking the actions described above, especially: (i) the action of demoting her on

grounds for which males doing the same job are not demoted, (ii) the action of placing her in

and/or subjecting her to a hostile work environment; (iii) the action of paying her less than male

administrators, (iv) the action of stereotyping her resulting in unequal treatment of her, and/or (v)

the action of retaliating against her for opposing discrimination, Defendants, acting individually

and together, violated Ms. Maccagnan's rights under Title IX of the Education Amendments of

1972, 20 U.S.C. §1681, *et seq*.

80.     Defendants took these actions intentionally and willfully, knowing that they were

unlawful or in reckless disregard of their unlawfulness.

81.     Defendants' actions caused harm to Maccagnan, which harm Maccagnan seeks to

remedy through action authorized under Title IX of the Education Amendments of 1972, 20

U.S.C. §1681, *et seq*., especially 20 U.S.C.A. § 1706.

**PRAYER FOR RELIEF**

A.      In view of all of the preceding, Ms. Maccagnan respectfully requests that this

Court award, adjudge and decree that:

(1)     The conduct alleged is violative of federal law and of Maccagnan's rights

thereunder.

20

(2)    Future violations in violation of federal law are enjoined.

(3)    In accordance with federal law,

    (a)    Defendants pay to Maccagnan an amount – the exact total of which is presently undetermined – comprised of

        (I)    The damages she has sustained and damages she will sustain in the future as a result of Defendants' violations, economic, emotional, constitutional and reputational,

        (II)    Liquidated damages and penalties as allowed by law, and

        (II)    Exemplary or punitive damages, as allowed under law.

    (b)    Ms. Maccagnan be awarded her costs of suit, including reasonable attorneys' fees and costs.

    (c)    Ms. Maccagnan be awarded interest on the above; and

B.    Ms. Maccagnan have such other, further and different relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

**Dated** this 28th day of February 2022.

Respectfully submitted:

*s/ Patricia S. Bangert*

_____

Patricia S. Bangert, Attorney at Law, LLC
501 S. Cherry Street, Suite 1100
Denver, Colorado 80246
Phone: (303) 228-2175
         (303) 947-5155 (cell)
Fax: (720) 728-1253
Email: trish@pbangertlaw.com
*Attorney for Plaintiff*

Address of Plaintiff:

c/o Patricia S. Bangert, Attorney at Law, LLC